IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| APPLICATION OF THE UNITED STATES OF AMERICA FOR AN AUTHORIZATION FOR THE DISCLOSURE OF PROSPECTIVE GPS/E911 LOCATION DATA RELATING TO THE SUBJECT TELEPHONES **412-277-2555** AND **412-808-8386** FROM METRO PCS | ) ) ) ) ) ) ) ) ) |

Magistrate No. 16-1171

[SEALED]

### AFFIDAVIT FOR DISCLOSURE OF PROSPECTIVE E911/GPS LOCATION DATA RELATING TO A WIRELESS TELEPHONE

I, Eric C. Goucher, being duly sworn, depose and say:

1. I am a Special Agent with the Federal Bureau of Investigation and, acting as such, I am a "federal law enforcement officer" within the meaning of Fed. R. Crim. P. 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. For the reasons and to the extent detailed below, this affidavit seeks:

    a. A warrant pursuant to 28 U.S.C. § 1651(a), Fed. R. Crim. P. 41 and 57(b), and 18 U.S.C.§ 2703 (c)(1)(A), authorizing the disclosure of records of physical location data, as described more fully below in Attachments A and B, generated at any time up to 45 days from the date of the proposed warrant, at such intervals and times as the government may request, that will establish the approximate position of the following wireless telephones issued by METRO PCS: assigned telephone number **412-277-2555** (**TARGET TELEPHONE #1, "TT1"**), subscribed to Unknown; and **412-808-8386** (**TARGET TELEPHONE #2, "TT2"**), subscribed to Unknown.

    b. Authorization under 18 U.S.C. § 3103a to the extent applicable, for good cause shown, not to reveal the above warrant order of disclosure until 30 days after acquisition of the last court-authorized disclosures (unless extended for good cause shown by an updated showing of the need for further delay);

1

c. A direction accompanying the proposed warrant of authorization that directs METRO PCS, its agents and representatives not to disclose the existence of that warrant or its execution or the underlying investigation until further notice.

2. Your Affiant's application and the grounds for the application relate to an ongoing investigation of DAVID T. STEVENSON JR, COREY JACKSON, and others, known and unknown, for their involvement in narcotics trafficking in Allegheny, Westmoreland, and Washington Counties of Pennsylvania. Based on the information submitted below, probable cause exists to believe that the requested location-based information will lead to evidence of offenses involving violations of Title 21, United States Code, Section 841(a)(1), that is, possession with intent to distribute a controlled substance (heroin); Title 21, United States Code, Section 843(b), that is, unlawful use of a telephone to facilitate the distribution of heroin; and Title 21, United States Code, Section 846, that is, conspiracy to distribute or possess with the intent to distribute heroin (the "TARGET OFFENSES"), as well as the identification of individuals who are engaged in the commission of these offences.

3. For the reasons set out in this affidavit, there is probable cause to believe that the TARGET OFFENSES have been committed, are being committed, or will continue to be committed by STEVENSON JR (user of the TT1), JACKSON (user of TT2), and others, known and unknown.

4. I have been advised that METRO PCS, which services the TARGET TELEPHONES, has the technical means promptly to generate and record physical location data with respect to a specified wireless telephone by measuring its position relative to other known reference points. This data is the product of techniques that this service provider developed to comply with a federal mandate to supply emergency responders with enhanced 911 ("E-911") service. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. The wireless industry has

2

adopted standards for the precision with which such techniques are expected to locate a wireless telephone.

5. When directed pursuant to warrant, METRO PCS will provide a designated law enforcement agency with periodically-updated physical location data with respect to the TARGET TELEPHONES. In order to acquire each update, the TARGET TELEPHONES must be powered on and the service provider may send a signal to the TARGET TELEPHONES which results in it transmitting a response to the provider's network. Where, as here, physical location data is to be generated at the request of law enforcement, the carrier may send its triggering signal to the TARGET TELEPHONES unobtrusively, without alerting the user of that device.

6. I submit that the following establishes probable cause to believe that crimes have been committed, that STEVENSON JR and JACKSON, along with others, known and unknown, committed those crimes, and that the information likely to be received concerning the location of the TARGET TELEPHONES used by STEVENSON JR and JACKSON will constitute evidence of that crime.

## PREVIOUS AUTHORIZATION

7. On November 3, 2016, at Magistrate Number 16-1035, United States Magistrate Judge Maureen Kelly authorized the disclosure of GPS/E911 location data for TT1. Your affiant incorporates the affidavit in support of that warrant as if set forth in full herein. I am now requesting continued authorization for TT1, and initial authorization for TT2, based on the following:

8. On November 23, 2016, investigators utilized court authorized GPS/E911 location data to locate and conduct surveillance on DAVID T. STEVENSON JR, the user of TT1, at Bob's Tavern in Finleyville, PA. STEVENSON JR was observed at the bar with COREY JACKSON, the user of TT2. After approximately one half hour at the bar, investigators observed the two men exit the bar and leave in a silver Ford F-150 attributed to JACKSON.

3

9. Investigators followed the F-150 back to Clairton and confirmed it parked at 640 3rd Street. To avoid detection, surveillance was halted and investigators observed for the next set of GPS/E911 location data. Less than 15 minutes later, an investigator parked along the route between Clairton and Finleyville observed the F-150 traveling back toward the bar. Approximately 10 minutes later, investigators observed STEVENSON JR and JACKSON at the gas station around the corner from Bob's Tavern. After getting gas, the two drove to Bob's Tavern, parked in the same spot in the rear lot as before, and entered the bar.

10. Approximately 15 minutes later, investigators witnessed STEVENSON JR and JACKSON exit Bob's Tavern. JACKSON walked to the driver side of the F-150 and disappeared from view, while STEVENSON JR stepped back toward the rear door of Bob's and just out of view. Shortly thereafter, a black Jeep which had been parked next to the F-150 backed out and left the area. Nobody had been observed exiting or entering the Jeep.

11. Over the course of the next hour, investigators did not see JACKSON leave the vicinity of the F-150 nor STEVENSON JR approach the F-150. GPS/E911 location data seemed to place STEVENSON JR by the rear entrance of the bar. Investigators did observe as a white van pulled up to the rear of the bar, near where STEVENSON JR had last been seen. Investigators did not see anybody exit the van, and it left the area less than two minutes after pulling up. Another Jeep pulled up along the passenger side of the F-150, nobody exited, it backed out, and parked by the side of the bar. The driver exited the Jeep, walked to the front door, then walked back to the Jeep before reversing back toward the F-150 and pulling back in the same way. After a brief moment, the Jeep again backed out of the space, this time leaving the area. A white minivan then pulled along the driver side of the F-150 and JACKSON walked to the driver side of the van briefly before returning to the truck and out of view again. Without anybody exiting the van, it backed out and left the area.

12. Based on investigators' training and experience, along with information received

4

from multiple independent sources, STEVENSON JR and JACKSON were conducting narcotics

sales. According to GPS/E911 location data for TARGET TELEPHONE #1, STEVENSON JR, along with co-conspirators, visits Bob's more than once per week, and always on Wednesday at roughly the same time and for the same approximate duration.

## CONTROLLED EVIDENCE PURCHASE

13. In December 2016, investigators conducted surveillance of STEVENSON JR during a controlled heroin purchase. A confidential source (CS1) met STEVENSON JR for a previously negotiated wholesale amount of heroin. Investigators observed as JACKSON arrived to collect the money the CS gave to STEVENSON JR (money provided by law enforcement), then investigators saw JACKSON leave the area. According to CS1, STEVENSON JR called JACKSON multiple times while JACKSON was gone. Pen register data for TT1 shows STEVENSON JR contacted TT2 multiple times during the period that JACKSON was gone, thus confirming your affiant's belief that TT2 is used by JACKSON.[1] Sometime later, investigators saw JACKSON return, and CS1 reported that JACKSON provided STEVENSON JR with the negotiated amount of suspected heroin. STEVENSON JR then provided the suspected heroin to CS1, who departed and turned over the suspected heroin to investigators immediately. It was then processed as evidence.

14. For these reasons, law enforcement has probable cause to believe that the TARGET TELEPHONES are currently under the domain of, and being used by, STEVENSON JR and JACKSON.

15. Accordingly, the prospective GPS physical location data requested in this application, as related to the TARGET TELEPHONES, will allow the FBI to: 1) help to confirm that the

---

[1] Although your affiant has not yet determined the subscriber of TT2, in my training and experience I know that it is not unusual for drug traffickers to initiate phone or other services under the name of an associate or family member, or under a false name or no name at all, in an effort to thwart detection by law enforcement. CS1's report that JACKSON is the user of TT2 is reliable because of CS1's ability to successfully make the controlled purchase of heroin described herein, combined with the other evidence discussed of JACKSON's involvement in drug trafficking with STEVENSON JR.

5

TARGET TELEPHONES are in possession of STEVENSON JR and JACKSON, 2) identify the associates of STEVENSON JR and JACKSON, 3) link STEVENSON JR and JACKSON to residences and drug stash house locations, 4) link STEVENSON JR and JACKSON to co-conspirators and local and/or out-of-state suppliers, and 5) allow law enforcement to determine when and where STEVENSON JR and JACKSON engage in future heroin transactions. In sum, this ping order will provide law enforcement with evidence of STEVENSON JR's and JACKSON's drug trafficking, which they purportedly conduct in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

16. Pursuant to 18 U.S.C. § 2705 (b), to the extent applicable, the government seeks a directive to METRO PCS not to disclose the government's acquisition of physical location data until further notice. Pursuant to 18 U.S.C. § 3103a, the government seeks authorization to delay our notification to STEVENSON JR and JACKSON until 30 days after acquisition of the last disclosures authorized by the Court's order (unless extended for good cause shown by an updated showing of the need for further delay). The grounds for this request are as follows: STEVENSON JR, JACKSON, and others are believed to be engaged in the distribution of heroin and are currently part of an ongoing investigation. Alerting STEVENSON JR and JACKSON to the existence of this order would likely result in discarding of telephones and prevent the continued identification of co-conspirators in this drug trafficking activity.

17. WHEREFORE, your affiant respectfully requests that the Court issue an order in the form annexed that: Pursuant to 28 U.S.C. § 1651(a), Fed. R. Crim. P. 41 and 57(b), and 18 U.S.C.§ 2703 (c)(1)(A), directs METRO PCS to disclose the requested physical location data with respect to the TARGET TELEPHONES to the FBI, to be generated at any time up to 45 days from the date of the proposed order, at such intervals and times furnishing all information, facilities, and technical assistance necessary to accomplish said disclosure unobtrusively;

18. Pursuant to the same authority, authorizes execution of the warrant at any time of day or night, due to the potential need to locate the TARGET TELEPHONES outside of daytime hours;

19. Pursuant to 18 U.S.C. § 2706 and the All Writs Act, 28 U.S.C. § 1651(a), directs that METRO PCS be paid compensation by FBI for reasonable expenses directly incurred in providing the facilities and assistance described above;

20. Pursuant to 18 U.S.C. § 3103a, authorizes the government to delay notice to STEVENSON JR and JACKSON to the extent requested herein; and

21. Pursuant to 18 U.S.C. § 2705 (b) and the All Writ Act, 28 U.S.C. § 1651(a), directs METRO PCS, its agents and representatives not to disclose the existence of the proposed warrant, its execution or the underlying investigation until further notice.

22. Because this investigation is ongoing, it is further respectfully requested that this application and any warrant issued thereon be ordered sealed until further notice.

_____
Eric Goucher
Special Agent, FBI

Sworn and subscribed before me
this 16th day of December, 2016.

_____
HONORABLE MAUREEN P. KELLY
Chief United States Magistrate Judge
Western District of Pennsylvania

## ATTACHMENT A

Property to Be Searched

The cellular telephones assigned call numbers **412-277-2555 (TARGET TELEPHONE #1, "TT1")**, subscribed to Unknown; and **412-808-8386 (TARGET TELEPHONE #2, "TT2")**, subscribed to Unknown, whose wireless service provider is METRO PCS. Information about the location of the TARGET TELEPHONES that is within the possession, custody, or control of METRO PCS. This court has authority to issue this warrant under 18 U.S.C. §§2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

ATTACHMENT B

Particular Things to be Seized

All information about the location of the TARGET TELEPHONES described in Attachment A for a period of 45 days, during all times of the day and night. "Information about the location of the TARGET TELEPHONES" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information for the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of METRO PCS, is required to disclose the Location Information to the government at such intervals and times as directed by the FBI. In addition, METRO PCS must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with METRO PCS' services, including by initiating a signal to determine the location of the TARGET TELEPHONES on METRO PCS' network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate METRO PCS for reasonable expenses incurred in furnishing such facilities or assistance. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. See 18 U.S.C. § 3103a(b)(2).

METRO PCS, its representatives, agents and employees, unless and until otherwise ordered by the Court, shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of this order or the generation of or production to law enforcement of the location information required herein, except METRO PCS may disclose the attached warrant to an attorney for T-MOBILE for the purpose of receiving legal advice.